IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| MARCIA L. JACKSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13-2626-CM |
| ) | |
| PARK PLACE CONDOMINIUMS ) | |
| ASSOCIATION, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM AND ORDER

Plaintiff Marcia L. Jackson, proceeding pro se, filed suit against defendant Park Place Condominiums Association, Inc., seeking damages under 28 U.S.C. § 1343 for alleged violations of her civil rights. Specifically, plaintiff claims that defendant discriminated against her on the basis of her race (African-American) during her tenancy in one of defendant's condominium units. This matter is before the court on defendant's Motion for Summary Judgment (Doc. 68).

Defendant set forth a total of thirty-nine statements of fact in support of its summary judgment motion. In her opposition briefing (and the supplements plaintiff has since filed[1]), plaintiff failed to comply with the applicable rules of civil procedure and the local rules of this court, even though defendant gave proper notice under Local Rule 56(f). (Doc. 69.) However, because of plaintiff's status as a pro se litigant, the court will construe plaintiff's response more liberally than it might construe a response filed by a licensed attorney. *Hall v. Bellmon*, 935 F.2d 1106, 1110 & n.3 (10th Cir. 1991) (citing *Overton v. United States*, 925 F.2d 1282 (10th Cir. 1990) for the proposition that liberal construal of pro se pleadings includes review of summary judgment briefs). As such, the court will deem admitted those facts to which plaintiff wholly failed to respond or otherwise controvert.

---

[1] Docs. 71, 72, 73 and 75.

Moreover, to the extent plaintiff has declared defendants' factual assertions as contested, but where she failed to specifically controvert those assertions, the court deems those facts admitted as well. D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.").

I. **FACTS**

Defendant in this case is Park Place Condominiums Association, Inc. ("Park Place"), which is governed by a Home Owners' Association ("HOA") Board. From January 2011 to January 2012, Marcia Cooper was President of the HOA Board. Plaintiff was not a unit owner but rather rented a condominium unit owned by Jake Hurley from April 2011 to February 2012. The HOA Board had no control over Hurley's action in renting his unit to plaintiff, and neither supported nor opposed it.

During her tenancy at Park Place, plaintiff had disputes with some of her neighbors about the amount of noise coming from her unit. One of plaintiff's neighbors, Maria Grazia Serra, lived directly below plaintiff. Plaintiff alleges that she was accused of playing loud music at 3:00 a.m. and of walking too loudly and that Ms. Grazia Serra would beat on plaintiff's ceiling. At one point, Ms. Grazia Serra filed a civil lawsuit against plaintiff in the District Court of Johnson County, Kansas. *See Marcia Grazia Serra v. Marci Jackson and Jacob Hurley*, Case No. 12CV00958. The lawsuit was resolved by default judgment against plaintiff, in which the court found that plaintiff "regularly and intentionally engaged in or permitted offensive, improper and/or unlawful activities with substantial certainty that such activities will interfere with [Ms. Grazia Serra's] use and enjoyment of her property." (Doc. 68-1 at 1.) The lawsuit was neither approved of, nor controlled or supported by, the HOA Board.

Ms. Cooper testified that she and other HOA representatives attempted to mediate the disputes over noise between plaintiff and her neighbors, that she explained to plaintiff on more than one occasion what the Park Place noise standards were, and that the HOA never fined or reprimanded plaintiff for the excessive noise coming from her unit.  (Doc. 68-1 at 1–2.)  During her tenancy, plaintiff never came to a HOA meeting, nor did she present any written grievance on any subject.  (*Id.* at 2.)

Plaintiff now claims that defendant "harassed, intimidated, and tormented her, endangered her safety, inflicted criminal hate and fear upon her, caused unexpected visits and phone calls to her by home owners members, to include accusations of playing loud black music at 3:00 a.m., walking too hard, and beating on her ceiling when she was watching TV."  (Doc. 65 ¶ 3.a.)

Plaintiff also claims that defendant caused her to wait three months to have her name placed on her mailbox and then three days later caused her nametag to be ripped off and discarded on the floor of the breezeway.  (Doc. 65 at 3, ¶ 3.a.)  While defendant claims that plaintiff never informed it that her nametag had been ripped off, plaintiff claims she told Ms. Cooper that she (plaintiff) suspected Ms. Grazia Serra.  (Doc. 70-3 at 3.)  Plaintiff also asserts that defendant caused the decals on her car to be pried off.  (Doc. 65 at 3, ¶ 3.a.)

## II.     ANALYSIS

### A.     Legal Standards

Plaintiff does not set forth under what federal statute she is pursuing her housing discrimination claim.  Defendant characterizes plaintiff's allegations as arising under 42 U.S.C. § 1981, which prohibits racial discrimination in the making, performance, modification, and termination of contracts.  *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1102 (10th Cir. 2001).  However, 42 U.S.C. § 1982 prohibits racial discrimination in the sale and rental of property, *Kelly v. U.S. Dep't of Justice*,

-3-

No. 03-4137-JAR, 2003 WL 22533562, at *2 (D. Kan. Oct. 31, 2003), and the Fair Housing Act ("FHA") makes it unlawful to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin." *Zhu v. Fisher, Cavanaugh, Smith & Lemon, P.A.*, 151 F. Supp. 2d 1254, 1258 (D. Kan. 2001) (quoting 42 U.S.C. § 3604(b)).

The court construes plaintiff's allegations in this lawsuit as asserting a claim of hostile housing environment. Whether that claim arises under the § 1981, § 1982, or the FHA is not significant here, however, because plaintiff cannot establish a prima facie case.

Plaintiff presents no direct evidence of housing discrimination, so the court applies the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04 (1973). *Smith v. Mission Assocs. Ltd. P'ship*, 225 F. Supp. 2d 1293, 1298–99 (D. Kan. 2002) (stating that, because plaintiffs alleged direct evidence of housing discrimination, the *McDonnell Douglas* burden-shifting framework did not apply); *see also Perry v. Woodward*, 199 F.3d 1126, 1134 (10th Cir. 1999) (burden-shifting framework applies to § 1981 claim); *Asbury v. Brougham*, 866 F.2d 1276, 1279 (10th Cir. 1989) (burden-shifting framework applies to § 1982 and FHA claims). Under *McDonnell Douglas*, plaintiff first must present a prima facie case of discrimination. If plaintiff proves a prima facie case, the burden shifts to defendant to produce evidence that its conduct was motivated by legitimate, non-discriminatory reasons. Once defendant articulates non-discriminatory reasons, the burden shifts back to plaintiff to show that the proffered reasons were pretextual.

A hostile housing environment claim is actionable when the offensive behavior unreasonably interferes with the use and enjoyment of the premises. *Honce v. Vigil*, 1 F.3d 1085, 1090 (10th Cir. 1993). The elements necessary for a prima facie case of hostile housing environment are: 1) plaintiff is a member of a protected class, 2) the conduct was unwelcome, 3) the conduct was based on plaintiff's

-4-

membership in a protected class, 4) it was sufficiently severe or pervasive to alter the plaintiff's living conditions and create an abusive environment, and 5) defendant knew or should have known about the harassment. *Smith*, 225 F. Supp. 2d at 1298–99.  In this case, plaintiff cannot survive summary judgment because she has failed to establish a prima facie case that she was subjected to a hostile housing environment.

### B.     Plaintiff Cannot Establish a Prima Facie Case of Housing Discrimination

There is no question that plaintiff had an on-going dispute with at least one of her neighbors (Maria Grazia Serra) over the issue of noise.  The dispute led to Ms. Grazia Serra filing a civil lawsuit in Johnson County District Court, of which defendant neither approved, controlled, nor supported, and which ultimately ended in a judgment against plaintiff.  Defendant provided evidence that it attempted—through Marcia Cooper and others—to mediate the noise disputes between plaintiff and her neighbors.  Plaintiff has provided no evidence that her disputes with her neighbor were racially motivated.  While plaintiff claims she was accused of playing loud "black" music, there is nothing in the record—including from Ms. Grazia Serra's lawsuit—that indicates it was the *type* of music with which Ms. Grazia Serra had an issue.  The court believes that what occurred between plaintiff and Ms. Grazia Serra was a dispute between neighbors, not unlawful discrimination by defendant.

Regarding plaintiff's nametag that she claims she found ripped off her mailbox and lying on the breezeway floor, plaintiff admits that she does not know how it came off or even if someone took it off—although plaintiff testified she informed Ms. Cooper that she suspected Ms. Grazia Serra ripped it off. While Ms. Cooper disputes that plaintiff informed her regarding her nametag, this fact is not material given that plaintiff is not claiming defendant refused to replace the nametag after the incident. Rather, plaintiff testified that, after she discovered the nametag on the breezeway floor (and after calling the police about it), she put the nameplate back on her mailbox, where it remained until she

moved out.  (Doc. 68-2 at 16.)  The court views the nametag issue as an isolated incident, and there is no evidence indicating or even suggesting that plaintiff's nametag was removed because she is black. Moreover, this conduct was not severe or pervasive enough to create a hostile housing environment, especially given that the nametag stayed on her mailbox after this incident.

The court views plaintiff's allegations related to her car decals similarly.  According to plaintiff, at some point while she was living at the condominiums, the "Deville" decal on her Cadillac was stolen.  While plaintiff testified that she filed a police report, there is no evidence that plaintiff informed any HOA member that her car decal was stolen.  In fact, the uncontroverted evidence is to the contrary—Ms. Cooper testified that plaintiff never informed the HOA of any incident regarding damage to her car while she was a tenant.  (Doc. 68-1 at 2 ¶ 16.)  Plaintiff put forth no evidence that defendant caused the decal to be removed or that defendant had any knowledge the decal was removed. Additionally, there is no evidence in the record that plaintiff's decal was stolen because she is black or that the missing decal altered plaintiff's living conditions.

Defendant offers an additional argument related to plaintiff's allegation that she was forced to move out of the condominiums early, although plaintiff failed to include any such allegation in the Pretrial Order.  (Doc. 65.)  Nevertheless, the court will address the argument out of an abundance of caution.  Plaintiff has alleged that Mr. Hurley (the owner of her rented unit) asked her to move out her three months before her lease expired,[2] but plaintiff offers no evidence that defendant suggested, asked, or ordered Mr. Hurley to request that plaintiff move out.  Moreover, other than plaintiff's own self-serving, conclusory statement (*e.g.*, Doc. 70-2 at 12), plaintiff has no evidence that Mr. Hurley requested that she move because she is black or that defendant suggested, asked, or ordered Mr. Hurley to request that plaintiff move out because she is black.  For all these reasons, plaintiff's claims of housing discrimination fail as a matter of law.

---

[2] Plaintiff did not pay Mr. Hurley rent for those three months.

**IT IS THEREFORE ORDERED** that defendant's Motion for Summary Judgment (Doc. 45) is granted.

Dated this 25th day of March, 2015, at Kansas City, Kansas.

s/ Carlos Murguia
**CARLOS MURGUIA**
**United States District Judge**
